## Alexandria

MARK EDWARD GALBRAITH

v.

COMMONWEALTH OF VIRGINIA

No. 0325-92-4

Decided August 2, 1994

COUNSEL

Robert Lee Tomlinson, II, for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Stephen D. Rosenthal, Attorney General; Virginia B. Theisen, Assistant Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—Mark Edward Galbraith (appellant) appeals from a judgment of the Circuit Court of Arlington County (trial court) that approved a jury verdict convicting him for possession of cocaine. Appellant contends that the trial court erred in admitting evidence regarding cocaine "that was not available at trial," and in admitting evidence "where the Commonwealth failed to properly establish the chain of custody." For the reasons that follow, we affirm.

Acting upon several complaints about street trafficking in narcotics in an area known for drug sales, on August 23, 1989 at 9:45 p.m., Arlington County Detectives Michael Schneider (Schneider) and Douglas Hearn (Hearn), along with other officers, were in "that area doing surveillances for street sales of narcotics." Schneider and Hearn, in separate vehicles, observed a truck drive into an alley next to a store. The truck was driven by appellant and was also occupied by a female passenger. Schneider observed a black male come from the alley and approach the cab of the truck. The passenger put her arm through the passenger window and passed money to the black male who put it into his pocket and returned to the alley. Three or four minutes later, the black male reappeared at the passenger window, placed his closed fist inside the truck, removed it, and left the scene.

As the truck backed out of the alley, Schneider radioed what he had observed to Hearn, who was stationed nearby, and advised him of the need to stop the truck. Schneider passed appellant and instructed Hearn to effect a traffic stop from the rear of the truck. Schneider stopped his vehicle in front of the truck and went back to the passenger's side. He noticed that the female went "down with both hands" to the truck's floorboard. Schneider testified that from his experience, it was common for drug users to begin using the drugs soon after the purchase, while still traveling in their vehicles. For safety reasons, Schneider opened the passenger door to see what the passenger had at her feet. Schneider found a smoking aluminum Mountain Dew can which had been fashioned into a crack pipe. The passenger was arrested.

As Hearn was getting out of his car, he saw a small object thrown out of the driver's side window. It appeared to be a pebble, and Hearn "walked right to it and retrieved it." Hearn further observed that appellant appeared to be trying to hide something. Upon closer examination, Hearn found two plastic packets by the driver's door, each containing suspected cocaine. A field test on the "pebble" made with the police test kit tested positive for cocaine.[1] Hearn packaged the two packets and the small pebble in individually sealed envelopes, then marked and sealed them in a larger envelope. The aluminum can was also separately packaged.

Later that night, Hearn locked the envelope in an evidence locker located in the property section. At 7:00 a.m. the next morning, Officer Victoria L. Gibbs (Gibbs), the property section property officer, removed the envelope and, after checking to see that the packages remained sealed, marked them as evidence and placed the envelope in a property section vault. Gibbs later transported the envelope containing the packages, still sealed, to the Northern Regional Forensic Laboratory in Fairfax, Virginia. Gibbs never broke the seal.

Forensic scientist Stephanie Smith received the envelopes in a sealed condition. She ground the contents of the two small packets and analyzed the material to be cocaine. The remaining small envelope was empty when she looked inside. Hearn testified that he had placed the pebble like substance inside that envelope.

---

[1] At trial, no objection to that testimony was made while Hearn was testifying; however, that was the primary basis for the pretrial suppression motion.

Prior to trial, upon learning that evidence was missing, counsel for appellant filed a written motion to suppress, requesting the following relief:

COMES NOW the defendant Mark Edward Galbraith, by counsel and moves the Court to suppress any evidence or testimony relating to a "chunk" of alleged crack cocaine, alleged to have been thrown out of the defendant's truck on the date of the offense as alleged in the indictment herein,[2] and in support thereof represents that the unavailability of the alleged cocaine, and the failure of the Commonwealth to have the same analyzed, deprived the defendant of his right to confront evidence against him.

At the hearing on the suppression motion, counsel for appellant and the Commonwealth stipulated that the "chunk" ("pebble") had been discovered as testified to by Hearn, that it had been field tested positive as cocaine, sealed in the envelope designated at trial as Exhibit 2, and transported with the other envelopes to the testing laboratory where, upon arrival, the envelopes all remained sealed. No explanation was offered concerning the disappearance of the "chunk" or "pebble."

The following colloquy occurred at the hearing on the suppression motion:

THE COURT: Now what case law do you have that is enlightening on the subject?

MR. TOMLINSON: Your Honor, I don't have a particular case. The base of the motion primarily is the fundamental right that one has to confront the evidence against them, and by the Commonwealth being able to say a substance went out the window, we field tested it, it tested positive for cocaine, and it hasn't been tested by the lab deprives the defendant of his right to have it tested by the lab.

And although the preliminary field test, while it may generally be accurate I don't think under these circumstances it affords the defendant his right to confront the evidence against him.

---

[2] The indictment charged only that appellant had unlawfully possessed cocaine.

THE COURT: Is the indictment founded . . . solely upon the field testing of this rock of cocaine?

MS. WALKER: It's founded upon the other cocaine that was found in the car.

\* \* \* \* \* \* \*

THE COURT: Well, cocaine is cocaine.

MS. WALKER: Right.

THE COURT: I mean you don't indict for a specific piece of it or a grain of it or rock of it.

MS. WALKER: No.

MR. TOMLINSON: But whatever you do indict for ought to be present in Court.

THE COURT: All of it?

\* \* \* \* \* \* \*

MR. TOMLINSON: Your Honor, I'm not saying that today. I expect that I might say that later. What I am saying today is if the Commonwealth is allowed at trial to testify that something was thrown out of a car and that that something was cocaine—I don't think the—I think that the unavailability of that—

THE COURT: We haven't gotten to—that would be an evidentiary ruling at trial.

\* \* \* \* \* \* \*

MR. TOMLINSON: Judge, if the Commonwealth is going to say we saw something come out of the car and we thought it was significant then I think that confuses the jury or creates some—it suggests something to the jury that the defendant does not have an opportunity to confront.

I mean the obvious inference is, if it came out of the car then it's something that they didn't want in the car, probably was cocaine and came out of the driver's side of the car.

It strikes me as fundamentally unfair to have the jury's attention drawn to a piece of evidence that the defendant doesn't have access to and was never formally tested by the type of test that—are accepted as reliable.

THE COURT: Well, this is a motion to suppress any evidence or testimony relating to a quote, "chunk" of alleged crack cocaine. Alleged to have been thrown out of the defendant's truck.

The motion is denied.

## I. THE MISSING EVIDENCE

Unless appellant can show bad faith on the part of the prosecution, or that the missing evidence would be exculpatory, failure to preserve potentially relevant evidence does not constitute a denial of due process. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). In *Tickel v. Commonwealth*, 11 Va. App. 558, 562-63, 400 S.E.2d 534, 537 (1991), we stated as follows:

Determining the intentions of the police in failing to preserve evidence requires consideration of the nature of the evidence. If it is clear that, had the evidence been properly preserved, it would have formed a basis for exonerating the defendant, then absent a showing to the contrary we must assume that the police were not acting in good faith. However, in *Youngblood*, the Supreme Court held that the "Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."

*Youngblood*, 488 U.S. at 57-58.

On appeal, the burden is on appellant to show that the trial court erred. *DePriest v. Commonwealth*, 4 Va. App. 577, 583, 359 S.E.2d 540, 542 (1987), *cert. denied*, 488 U.S. 985 (1988). In the case before us, appellant failed to show that, had the missing substance been present at trial, it would have aided in his defense or that its absence was caused by bad faith action of the prosecution. Therefore, appellant has not been denied due process.

## II. THE FIELD TEST RESULT

Appellant further argues that field test results are generally less reliable than laboratory test results made admissible by Code § 19.2-187. Appellant offered no proof as to the accuracy of either test; however, that was the Commonwealth's burden, not appellant's. Although the Supreme Court of Virginia has declined to adopt the "*Frye* test"[3] that requires proof of general acceptance by the scientific community in the particular field in which the test belongs before such scientific evidence is admissible, this Court has predicated the admissibility of such evidence on a finding of reliability. *See Hall v. Commonwealth*, 12 Va. App. 198, 209, 403 S.E.2d 362, 369 (1991).

▮ Code § 19.2-187 provides a basis for admitting into evidence the results of an analysis performed by the Division of Forensic Science (Division) or the Division of Consolidated Laboratory Services when the certificate showing the results is attested to by the person who performed the test, without requiring that person to appear at trial. Similarly, but limited to preliminary hearings, Code § 19.2-188.1 permits any law enforcement officer to testify as to the results of field tests which have been approved by the Division pursuant to regulations adopted in accordance with the Administrative Process Act (Code §§ 9-6.14:1 *et seq.*). The record before us contains no evidence that the field test used by Hearn had been approved by the Division. Because we cannot determine the reliability of the field test kit used to support Hearn's testimony that the substance tested positive as cocaine, we hold that the trial court erred when it permitted the officer to testify to the result produced by the test.

## III. CHAIN OF CUSTODY

At the scene of appellant's arrest, Hearn seized the can used for consumption of cocaine; two baggies found near the driver's door of appellant's truck, subsequently proved to contain cocaine; and the missing "pebble." Hearn placed each item into a separate container and sealed the containers. He then placed those containers into a larger bag and sealed that bag. Finally, he placed the sealed bags into a locked evidence locker from which they subsequently were delivered, still sealed, to the laboratory. We find no

---

[3] *See Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923); *O'Dell v. Commonwealth*, 234 Va. 672, 696, 364 S.E.2d 491, 504-05, *cert. denied*, 488 U.S. 871 (1988).

chain-of-custody error.

Having found that testimony relating to the missing "pebble" was inadmissible because the Commonwealth failed to present evidence as to the reliability of the field test kit, we must further consider the directions given by Code § 8.01-678 that provide as follows:

When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed:

1. For the appearance of either party, being under the age of eighteen years, by attorney, if the verdict, where there is one, or the judgment be for him and not to his prejudice; or

2. For any other defect, imperfection, or omission in the record, or for any error committed on the trial.

There is no conflict in the evidence as to where the two bags of cocaine, upon which the Commonwealth based its case, were discovered. When the Commonwealth rested its case, appellant specifically advised the trial court that he elected not to testify. Moreover, appellant did not call his passenger to testify on his behalf. The only witness called by appellant was Schneider, and that was for the sole purpose of determining whether Schneider could identify a picture of a truck. Schneider noted that the license on the truck and the truck's color and make were the same, but he could not say that the picture was the same as the officers had observed on the night of appellant's arrest.

The "pebble" evidence was merely cumulative as to the evidence of cocaine found in the truck. The Commonwealth advised the court and the jury that the evidence found in the truck was the basis for appellant's indictment. If properly admitted, the additional rock was only corroborative of the charge that appellant possessed the cocaine discovered in the truck. Even without it, the Commonwealth's case was strong and uncontradicted. In addition, Hearn was available for cross-examination and appellant's counsel in fact cross-examined him fully concerning the thrown "pebble."

Although the trial was not perfectly conducted, we find that appellant had a fair trial:

> It has been well said that there is no such thing as a perfect trial. Every man is entitled to a fair trial and to nothing more, and so out of the necessities of the case, and out of the imperative demands of common sense, has grown the doctrine of harmless error.

*Oliver v. Commonwealth*, 151 Va. 533, 541, 145 S.E. 307, 309 (1928). Before we adjudge an error to be harmful or harmless, we must carefully examine all the evidence. *Williams v. Commonwealth*, 153 Va. 987, 995, 151 S.E. 151, 153-54 (1930). An error committed in the trial of a criminal case does not automatically require reversal of an ensuing conviction. *Rozier v. Commonwealth*, 219 Va. 525, 528, 248 S.E.2d 789, 791 (1978). Thus, "[e]ach case must . . . be analyzed individually to determine if an error has affected the verdict." *Lavinder v. Commonwealth*, 12 Va. App. 1003, 1009, 407 S.E.2d 910, 913 (1991).

In our review, we are cognizant that the doctrine of harmless error has found statutory, Code § 8.01-678, and judicial acceptance in this and other states, *Cardwell v. Commonwealth*, 209 Va. 412, 415-16, 164 S.E.2d 699, 702 (1968), is deeply embedded in our jurisprudence, *Gilland v. Commonwealth*, 184 Va. 223, 235, 35 S.E.2d 130, 134 (1945), and is favored by the courts. 1B Michie's Jurisprudence *Appeal and Error* § 285 (1980).

In review of those principles, we find that our Supreme Court in *Pine v. Commonwealth*, 121 Va. 812, 837, 93 S.E. 652, 659-60 (1917), said that the denial of a constitutional right is of itself reversible error.[4] Subsequently, that statement has been modified by Code § 8.01-678 and judicial construction. Now, if the record discloses beyond a reasonable doubt that the verdict was not affected by such denial, the denial of that right will be held to be harmless. *Reid v. Commonwealth*, 213 Va. 790, 795-96, 195 S.E.2d 866, 870-71 (1973); *see also Fahy v. Connecticut*, 375 U.S. 85, 86-92 (1963); *Chapman v. California*, 386 U.S. 18, 22 (1967). The Virginia Supreme Court has held that where there is substantial conflict in the evidence,[5] the error is presumed prejudicial. *See Joyner v. Commonwealth*, 192 Va. 471, 476, 65 S.E.2d 555, 558 (1951); *Elliott v. Commonwealth*, 172 Va. 595, 601, 1 S.E.2d 273, 276 (1939). But errors presumed prejudicial

---

[4] In the case before us, no denial of a constitutional right has been shown.

[5] In the case before us, there is no substantial conflict in the evidence.

may be rebutted where it plainly appears by the record that the error could not have affected the outcome of the trial. *Mitchell v. Commonwealth*, 192 Va. 205, 212, 64 S.E.2d 713, 716 (1951).

As applicable to the case before us, two cases provide guidelines that assist in our conclusion. In *Reid*, the Court approved the following:

> The doctrine of harmless error has been recently applied in the case of *Schneble v. Florida*, 405 U.S. 427 (1972), where the statement of a codefendant who did not testify was admitted into evidence against the defendant in violation of the Sixth Amendment. In finding the error harmless, the court reasoned as follows:
>
>> "[W]e must determine on the basis of 'our own reading of the record and on what seems to us to have been the probable impact . . . *on the minds of an average jury*,' . . . whether [the codefendant's] admissions were sufficiently prejudicial to petitioner so as to require reversal.
>>
>> \* \* \* \* \* \* \*
>>
>> "In this case, we conclude that the '*minds of an average jury*' would not have found the State's case significantly less persuasive had the testimony as to [the codefendant's] admissions been excluded." 405 U.S. at 432.

213 Va. at 796, 195 S.E.2d at 871 (emphasis added). In *Speller v. Commonwealth*, 2 Va. App. 437, 444, 345 S.E.2d 542, 547 (1986), we approved the following from *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986):

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

A careful review of the evidence in this record discloses that Hearn lawfully discovered two packages of cocaine in appellant's truck between where appellant sat in the driver's seat and the driver's side door. These two packets were sealed and delivered to an evidence locker. From that locker, while still sealed, the packets were delivered to an approved laboratory where the contents were tested. The contents proved to be cocaine and were introduced as evidence at trial. This evidence was totally separate from the missing "pebble"[6] and is uncontradicted. Neither appellant nor his passenger testified, and no adverse inference may be drawn from that. However, it did leave the Commonwealth's evidence without conflict. As was said in *Schneble*, we conclude that the "minds of an average jury," 405 U.S. at 432, would not have found the Commonwealth's case less persuasive if the testimony of Hearn relative to the "missing pebble" had been excluded. Our conclusion is in accord with *Overbee v. Commonwealth*, 227 Va. 238, 315 S.E.2d 242 (1984); *Bond v. Commonwealth*, 226 Va. 534, 311 S.E.2d 769 (1984); *Lane v. Commonwealth*, 223 Va. 713, 292 S.E.2d 358 (1982); and *Goins v. Commonwealth*, 218 Va. 285, 237 S.E.2d 136 (1977).

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

Fitzpatrick, J., concurred.

Barrow, J., dissenting.

If the jury concluded that the object thrown out of the car's window was cocaine and that this fact corroborated the prosecution's argument that the defendant possessed the two packets of cocaine found by the driver's door, evidence of the field test results affected the verdict, and its erroneous admission into evidence was not harmless. *See Bunting v. Commonwealth*, 208 Va. 309, 314-15, 157 S.E.2d 204, 208 (1967); *Henderson v. Commonwealth*, 5 Va. App. 125, 130, 360 S.E.2d 876, 879 (1987); *Johnson v. Commonwealth*, 3 Va. App. 444, 450-51, 350 S.E.2d 673, 676 (1986).

---

[6] In her closing argument to the jury, the Commonwealth's attorney frankly admitted that although the substance that "came flying out of the window" was field tested, "we'll never know [what it was] since it's gone." She concentrated her argument on the packets of cocaine found inside the truck.

An error is harmless only when " 'it plainly appears from the record and the evidence given at the trial that' the error did not affect the verdict." *Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (quoting Code § 8.01-678). A reviewing court must make this determination "without usurping the jury's fact finding function." *Lavinder v. Commonwealth*, 12 Va. App. at 1005, 407 S.E.2d at 911.

The defendant disputed the prosecution's contention that he possessed the two packets of cocaine found next to his door. The evidence that he possessed them, although sufficient, was circumstantial. The prosecution argued that, in determining whether the defendant possessed the two packets of cocaine, the jury should consider the fact that the defendant threw cocaine out of the window of the car. Only the erroneously admitted results of the field test proved that the object thrown out of the window was cocaine. If the jury concluded what the prosecution urged it to conclude, the erroneously admitted evidence affected the verdict.

The defendant was entitled to have the jury resolve this question. I am unable to conclude from the record and the evidence that this error did not affect its verdict. Therefore, I would reverse the judgment of conviction and remand the proceeding for a new trial.